UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                 :

UNITED STATES OF AMERICA,       :     18cr102 (DLC)
                                   :
            -v-               :     OPINION AND
                                   :        ORDER
DAVID MICHAEL HYLTON,         :
                                   :
                 Defendant.    :
                                   :
--------------------------------------- X

APPEARANCES:

For United States of America:
Peter J. Davis
Juliana Murray
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007

For defendant:
Martin Samuel Cohen
Federal Defenders of New York Inc.
52 Duane Street, 10th Floor
New York, NY 10007

DENISE COTE, District Judge:

    The defendant is facing charges that he violated the terms of his probation.  Defense counsel and the Government agree that the defendant, who is detained, is not competent to assist in his defense.  The Court has ordered his transfer to a Federal Medical Center ("FMC") for an evaluation by medical staff at the Bureau of Prisons ("BOP") to determine whether he can be restored to competency.  See 18 U.S.C. § 4241(d)(1).  The defendant moves to dismiss charged violations of probation,

arguing that the delay by the BOP in providing this evaluation violates the four-month limitation contained in § 4241(d), as well as the defendant's rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  For the following reasons, the defendant's motion to dismiss is denied.

## Background

The defendant has been diagnosed as suffering from schizophrenia.  Through the involuntary administration of medication, he was restored to competency in 2019 during his prosecution for the underlying criminal offense of bank robbery. With the hope that he would remain compliant with his medical treatment, he was sentenced to probation in 2020 following a plea of guilty.

While on probation, the defendant stopped taking his medication and violated the terms of his probation.  There is agreement that he is currently incompetent to assist in his defense.  On April 28, 2023, the Court ordered his transfer to an FMC to determine once again if he could be restored to competency.  Due to a lack of FMC capacity, the defendant is still awaiting a transfer.  This history is described in more detail below.

I.    Underlying Arrest Through Sentencing

Hylton was arrested on January 25, 2018 on the charge of bank robbery and detained.  A bank teller reported that Hylton demanded money while holding what appeared to be a shotgun.

Hylton was indicted on February 8 on one count for bank robbery by force, violence and intimidation in violation of 18 U.S.C. § 2113(a).  Shortly thereafter, the staff at the BOP facility at which he was housed recommended a mental competency evaluation of the defendant.

At the defendant's arraignment on February 13, 2018, the parties consented to a competency hearing.  The defendant was represented by attorneys from this district's Federal Defenders' Office, as he has been throughout the proceedings.  Defense counsel requested at the arraignment that the defendant be examined in New York by a medical expert before being transferred to an FMC for treatment and the attempted restoration of his competency.  The Court agreed, and with consent of the Government, defense counsel chose Dr. Michael B. First for that examination.  On February 14, the Court ordered Dr. First to conduct an examination of the defendant pursuant to 18 U.S.C. § 4241(b).  In his report, which the Court received in April, Dr. First recommended that the defendant be transferred to an FMC for the restoration of his competency.  Dr. First

opined that Hylton was suffering from a severe psychotic
disorder, most likely schizophrenia.  He hoped that with
appropriate antipsychotic medication that Hylton could be
restored to competency.  In a letter of April 13, defense
counsel agreed that Hylton was not competent and represented
that it would not seek a competency hearing.

On April 13, the Court ordered that Hylton be transferred
to an FMC, pursuant to 18 U.S.C. § 4241(d), for a reasonable
period of time not to exceed four months to determine whether
there is a substantial probability that in the foreseeable
future Hylton would attain the capacity to understand the nature
and consequences of the proceedings against him and to assist
properly in his defense.  The defendant was then transferred to
the Springfield, Missouri FMC, where he was evaluated.  The FMC
staff reported that Hylton remained incompetent and was unlikely
to be restored to competency in the absence of involuntarily
administered psychiatric medication.  Without objection from
defense counsel, the Court issued an Order on November 13,
directing that Hylton be administered psychiatric medication
involuntarily to restore his competency.

In July 2019, the FMC staff reported that the defendant was
competent to assist in his defense.  It had diagnosed Hylton
with schizophrenia and explained that it "is imperative that he

4

remain compliant with prescribed medication." The identified medication was administered by an intramuscular injection every four weeks. As of that time of the report, Hylton was cooperating with the administration of the drug.

In a letter of August 7, defense counsel agreed that Hylton should be returned to New York but objected to the administration of medication involuntarily. An Order of August 12 directed the return of the defendant to New York. The Court extended the November 13 Order approving the use of involuntary medication through the conclusion of any hearing to be held to determine whether continued involuntary medication was appropriate. The defendant returned to this district on August 27.

At a September 9 hearing, defense counsel requested an adjournment. She reported that Hylton appeared to be competent but wanted additional time to consult with a medical expert.

In an October 3 letter, defense counsel informed the Court that counsel had arranged for Hylton to be examined again by an independent physician and that defense counsel agreed that Hylton was competent to proceed. Defense counsel represented that she would not request a competency hearing.

At an October 9 conference, counsel and the Court agreed that Hylton was competent, that there was no need for a

competency hearing, and that so long as Hylton continued to submit to the prescribed injections, there was no reason to believe he would not remain competent.  A trial date was set for March 16, 2020.

On February 13, 2020, the defendant entered a plea of guilty.  During that proceeding defense counsel explained that Hylton had been compliant with the medication regimen and reported that he "feels better about" it.  Counsel represented that he had no concerns about his client's competency at that point.  During the allocution, the defendant reported to the Court that he felt good.  He explained under oath, after having been advised of his rights, that in January 2018 he carried a thing that was visible to others and that looked like a weapon and that he took money from a bank employee while doing so.

The plea was entered pursuant to a plea agreement.  In the agreement, the parties stipulated to an offense level of 22 and Criminal History Category of IV, which resulted in a sentencing guidelines range of 63 to 78 months' imprisonment.  The defendant also agreed to make restitution in the amount of $7,210.

The Presentence Report ("PSR") described the defendant's convictions for activity that included assaults, weapons possession, and shooting a victim.  According to the PSR, the

defendant reported that he had never received mental health
treatment prior to his arrest on this federal offense.   The PSR
recommended a sentence of time served, which was a variance from
the Sentencing Guidelines range of 63 to 78 months'
imprisonment.   It recommended as a condition of release that he
continue to take any medications prescribed by a mental health
treatment provider.

The Government disagreed.   The Government's letter of June
16 described Hylton's history of dangerous and violent behavior.
It requested a substantial sentence of imprisonment such as one
within the stipulated Sentencing Guidelines range.

Defense counsel agreed with the PSR's recommendation.   In
its letter of July 27, 2020, defense counsel explained that
antipsychotic medication and supportive psychiatric care had
transformed Hylton's life and perhaps even saved it.   Counsel
represented that the Federal Defenders' social workers were
ready to offer support and committed to Hylton's wellbeing.
Counsel identified a community-based treatment program that
included medication management and compliance, with which the
Federal Defenders were eager to connect Hylton and his family.
Defense counsel represented that Hylton acknowledged and
accepted that "medication, treatment, and support" will "always"
be necessary parts of his life.

The sentencing proceeding occurred on July 30, 2020.[1]
Defense counsel reported that the defendant had become
increasingly clear-minded and that his emotional range was
greater than he had ever seen before.  In counsel's opinion,
Hylton was "back to the person that he is without the suffering
of the schizophrenia."  The Court summarized its understanding
of the offense and the defendant's condition.  It observed that
not everyone who suffers from schizophrenia is violent or
presents a danger to society, but that Hylton is violent and
does present a danger to society when not medicated.  Therefore,
as the Court explained, it needed to be confident that the
defendant was willing to take his medication.  Defense counsel
explained that he had discussed that issue with Hylton, and that
while Hylton was initially resistant to taking the medication,
that resistance "has fallen."  Since Hylton was feeling so much
better, defense counsel believed that he would continue to take
the medication.  Counsel described his conversations with Hylton
about the importance of taking his medication and reported that
Hylton "understand the stakes . . . [H]e wants to maintain his
regimen of medication because he wants to be healthy."  The

---

[1] Sentence was originally scheduled for May 15, 2020.  Due to the
COVID-19 pandemic, it was adjourned several times.

defendant also told the Court that he wanted to continue with his medication.

The Court sentenced the defendant to five-years' probation with special conditions of, inter alia, outpatient mental health treatment and compliance with psychiatric medication.  Because "the protection of society is a major concern," the Court explained that it would not have imposed this sentence without an understanding that the defendant consented to the continuation of the monthly injections to treat the schizophrenia and was willing to participate in mental health treatment.  The Court warned the defendant that "if he violated the terms of probation, he would come before me, and I could impose any sentence that I legally could impose today."  The Court stated, "I want there to be absolute clarity that I will send the defendant back to prison for a long time if he is not compliant with treatment, because he poses a danger to society."

The August 6, 2020 Judgment of Conviction imposed a sentence of five years' probation with several special conditions.  Three of those are particularly relevant here. They are:

> You must participate in an outpatient mental health treatment program approved by the United States Probation Office.  You must continue to take any prescribed medications unless otherwise instructed by the health care provider.  You must contribute to the cost of services rendered based on your ability to pay

and the availability of third-party payments.   The
Court authorizes the release of available
psychological and psychiatric evaluations and reports,
including the presentence investigation report, to the
health care provider.

You must accept the monthly [] shot of [antipsychotic
medication] unless the Court authorizes a change in
medication to treat your schizophrenia.

If admitted to the Forensic Assertive Community
Treatment (FACT) program, you must cooperate with the
program.

II.   Probation

Following his release on July 30, 2020, the defendant
quickly fell out of compliance with his conditions of probation.
After initially taking his medication, the defendant used
marijuana and failed to participate in outpatient mental health
treatment sessions.   The Probation Department filed two
specifications of violation of the terms of probation on
December 3, 2020.   At a December 18 conference, the parties
asked for an adjournment so that defense counsel could
investigate inpatient or other treatment programs for Hylton.
The Court, the Probation Officer, and defense counsel discussed
the defendant's insurance coverage for his monthly injections
and the defendant's residence options.

At an April 2, 2021 conference, the Probation Officer
reported that Hylton had quit his job and she did not know where
he was living.   He had failed to report for drug testing.

Defense counsel consented to Hylton's placement at a halfway house ("RRC").  He also discussed the defendant's access to medication, given the fact that Johnson & Johnson had stopped providing the drug the defendant had been taking.  He represented that the defendant would appear for drug testing and that the defendant wished to pursue employment at a different kind of job.  The Court ordered the defendant to reside in the RRC for six months.

On June 22, 2021, the Court received an amended violation report from Probation that charged the defendant with failing to participate in mental health treatment, failing to stay at the RRC, and failing to report to Probation.  The Probation Department reported that it was gravely concerned about Hylton's stability as he had not received his medication in over two months.  It had been arranged that Hylton would receive his medication at no cost, but that arrangement was at risk given his failure to attend treatment sessions.  An arrest warrant was issued on June 22, 2021.

The defendant was arrested on January 3, 2022.  The defendant was presented on January 4 on eight specifications of violation of probation and ordered detained.

At a conference on January 21, 2022, defense counsel requested 45 days to have Hylton medically evaluated.  Defense

11

counsel noted that Hylton had responded well to medication in
the past.  That request was granted.

At a conference on June 2 counsel for the defendant
informed the Court that he had not yet received a medical
report, but that Hylton had really improved during his period of
detention and was now in "in really good shape, which is
remarkable."  The Court granted the defense request for an
adjournment.  On consent, that deadline for submission of the
expert's report was extended several times.

In a letter of February 9, 2023, defense counsel informed
the Court that its expert had issued a preliminary report
finding that the defendant was not competent to proceed.  At a
conference on February 28, defense counsel pointed out that
Hylton had been in custody for fourteen months since his January
2022 arrest.  He argued that the federal system provided no
options for Hylton if he was not willing to be medicated.  When
the Court inquired how long it would take for defense counsel to
obtain a final report from the medical expert, defense counsel
offered to share the expert's draft report with the Government.
The Court observed, as it had in the past, that it had placed
the defendant on probation with the understanding that he would
cooperate with the Probation Department and take the medication
necessary for his mental health stability.  It asked the parties

to consider what steps should be taken if the defendant was
unwilling to take medication.  The defendant refused to attend a
March 24 conference with the Court and the Court declined to
enter a force order to obtain his appearance.

The Government submitted the expert's report, dated
February 15, 2023, to the Court on April 21, 2023.  The expert
concluded that Hylton was acutely psychotic and suffered from
hallucinations.  She concluded that he was not able to assist in
his defense.  In an Order of April 21, the Court determined that
the defendant was legally incompetent and required the parties
to submit any objection to that determination by April 26.  On
April 26, the Government requested that the Court invoke the §
4241(d) procedures and send the defendant to an FMC for an
evaluation.  Defense counsel concurred in his letter of April
26, hoping that any evaluation could be expedited so that Hylton
was not hospitalized longer than necessary.  On April 28, the
Court ordered that the defendant be transferred to an FMC for a
restoration evaluation.  That transfer has not yet happened.

In a letter of July 11, the BOP reported that the
defendant's likely date of transfer to an FMC is February 2024 -
- a projected delay of 10 months from the date of the Court's §
4241(d) Order.  The BOP explained that this delay "is a
nationwide systemic issue due to the high volume of defendants

13

awaiting placement at an FMC." Dr. Dia Boutwell, the Chief of
Psychological Evaluations for the BOP, submitted a declaration
with the BOP's July 11 letter. In that declaration, she
explained that "[t]ypically, the pipeline is first-come, first-
served, and individuals are placed in order based on the date of
the § 4241(d) order." Whenever a demand or request is made to
"bump" an individual to the front of the line and that request
is accommodated, however, it will delay everyone else who is
currently awaiting admission to an FMC within the BOP.[2]

In a letter of July 17, the defendant proposed a schedule
for filing the instant motion. It requested a briefing schedule
that would provide a fully submitted motion by September 8,
2023.

On August 14, 2023, the defendant moved to dismiss the
charged violations of probation. The defendant argues that the
projected 10-month delay in complying with the Court's § 4241(d)
Order violates § 4241(d) and the Due Process Clause of the Fifth
Amendment to the U.S. Constitution. The motion became fully
submitted on September 8.

---

[2] A Ninth Circuit ruling requiring defendants from that Circuit
to be placed at a restoration site based on the date of a §
4241(d) order, as opposed to waiting their turn in line, has
severely impacted the BOP's ability to manage the placement
process.

14

## Discussion

The defendant argues that the Government violated 18 U.S.C. § 4241(d)(1) and his constitutional right to due process by continuing to detain him.  These arguments fail.

No statutory violation of § 4241(d) has occurred.  Section 4241(d) sets forth the procedures a district court must follow if it finds by a preponderance of evidence that the defendant is mentally incompetent to understand the nature of the proceedings against him or to assist properly in his defense.  18 U.S.C. § 4241(d).  Specifically, § 4241(d) provides that if such a finding is made:

> [T]he court shall commit the defendant to the custody of the Attorney General.  The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> > (1) for such a reasonable period of time, <u>not to exceed four months</u>, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward[.]

18 U.S.C. § 4241(d) (emphasis added).  The Second Circuit has interpreted this four-month limit to apply only to the hospitalization period.  See <u>United States v. Magassoubak</u>, 544 F.3d 387, 408 (2d Cir. 2008) ("[W]e construe § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent defendant in custodial hospitalization").  Accordingly, because Hylton has not yet been

15

hospitalized, the Government has not violated the express provisions of § 4241(d).

Next, the defendant argues that his projected 10-month detention violates his right to due process.  Hylton argues that the appropriate remedy for this violation is dismissal of the pending probation violations, or in the alternative, an Order mandating the transfer of Hylton to a suitable FMC within 15 days.

A person "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." Jackson v. Indiana, 406 U.S. 715, 738 (1972).  Jackson mandates that where, as here, "an incompetent criminal defendant is held in custody for the purpose of determining if he will regain competency in the foreseeable future, the defendant's commitment must at all times reasonably relate to evaluating his ability to regain competency or to restoring him to competency through treatment." United States v. Brennan, 928 F.3d 210, 214 (2d Cir. 2019).  The Due Process Clause may be invoked to dismiss an indictment when Government conduct is "so outrageous that common notions of fairness and decency would be offended." United States v.

16

Walters, 910 F.3d 11, 27 (2d Cir. 2018) (citation omitted).
"Dismissal of an indictment is a remedy of last resort." United
States v. Stein, 541 F.3d 130, 144 (2d Cir. 2008).

Hylton has not shown that his delayed transport to an FMC
constitutes a violation of his right to due process or is
grossly shocking and outrageous conduct.  Many of the
circumstances surrounding this prosecution are undisputed.
Hylton has a record of violence.  He suffers from debilitating
schizophrenia that, thankfully, has responded well to
medication.  Medication has restored him to competency.  He has
at times voluntarily complied with the administration of the
medication by injection, understanding that it is essential to
his mental health.  His mental health condition, coupled with
concerns about public safety and his own good health, have
complicated the history of this prosecution and affected the
decisions made by the Government, his defense counsel, and the
Court.  The immediate delay at issue here, which is a delay in
transferring Hylton to an FMC for evaluation and treatment, is
attributable to the limited bed space in the few FMC's qualified
to address Hylton's needs, as well as the admirable BOP policy
of distributing bed space on a first-come, first-served basis,
unless a court order interferes with that system.  None of these
facts suggests that Hylton's right to due process is being

infringed or that this Court should enter an Order placing

Hylton's needs above those of all other similarly situated

federal defendants and undermining the BOP's orderly

administration of limited but essential services.

### Conclusion

The defendant's August 14, 2023 motion to dismiss the

specifications of violation of probation is denied.

Dated:     New York, New York
           November 3, 2023

                                        _____
                                        DENISE COTE
                                        United States District Judge

18